114   535
a213s 318

### Amy Rowe, Administratrix, v. Taylorville Electric Company.

1. ELECTRICITY—*duty of persons using.* Electricity is universally recognized as a most dangerous and subtle agency, and the law requires that persons and corporations engaged in the business of supplying it, shall exercise a degree of care and caution commensurate with the danger involved.

2. ELECTRIC WIRES—*duty to insulate.* A company maintaining wires for the purpose of supplying light and power must exercise the utmost care at places where persons may reasonably be anticipated to go for work, pleasure or business, to prevent injury, and that at such places the company is bound perfectly to insulate and protect its wires from contact, and to maintain them in that condition.

3. ORDINARY CARE—*when question of exercise of, becomes one of law.* This question becomes one of law when the evidence in a case, together with all reasonable inferences to be deduced therefrom, is insufficient to support a verdict.

Action on the case for death caused by alleged wrongful act. Error to the Circuit Court of Christian County; the Hon. TRUMAN E. AMES, Judge, presiding. Heard in this court at the November term, 1903. Affirmed. Opinion filed June 28, 1904.

SHARROCK & GRUNDY and LANE & COOPER, for plaintiff in error.

PERCY WARNER, for defendant in error; J. E. HOGAN, of counsel.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This was an action on the case by plaintiff in error against defendant in error, to recover damages for wrongfully causing the death of her husband and intestate, Albert Rowe. On the trial, at the close of plaintiff's evidence, the defendant moved the court to instruct the jury to find the defendant not guilty, which the court refused to do, whereupon defendant called and examined one witness who testified to facts which it was claimed tended to show contributory negligence on the part of deceased, and then renewed its motion to give a peremptory instruction. The instruction was given and thereafter the court rendered judgment against the plaintiff for costs. This writ of error is prosecuted to reverse such judgment.

The declaration, consisting of five counts and an additional count, alleges generally, that on January 4, 1902, defendant was operating an electric light plant in the city of Taylorville; that the deceased was at that time in the employ of a telephone company, then constructing its plant in said city; that while said deceased was on a pole belonging to said telephone company, engaged in necessary work in the construction of such telephone plant, a current of electricity from a wire of defendant's plant communicated with a telephone wire he was then handling, whereby he received the force of said current and was thereby shocked and caused to fall from said pole and in consequence thereof was killed. The first count alleges negligence in permitting a current of electricity to escape from defendant's wire and be communicated to a telephone wire, which deceased was handling; the second count charges defendant with negligence in turning on a current of electricity without giving the customary warning by whistle from its engine. The third count alleges that defendant knew that the employees of the telephone company only performed their work of stringing telephone wires when the electric current was not turned on, and charges that notwithstanding such knowledge it neglected to give them

warning of its purpose to turn on such current. The fourth count charges defendant with negligence in using improperly and imperfectly insulated wires. The fifth count charges general negligence in constructing, maintaining, managing and operating defendant's plant. The additional count alleges a custom of the defendant to sound a whistle five minutes before turning on its current, the reliance of the employees of the telephone company on such custom, and charges negligence on the occasion in question in turning on the current without such warning. To this declaration the defendant pleaded the general issue.

The only assignment of error argued by appellant, is the action of the court in giving the peremptory instruction, and all others are thereby waived.

The evidence in the case disclosed the following uncontroverted state of facts: that the defendant had for eight years operated an electric light plant in the city of Taylorville; that at the place in question, the south side of North street, near the corner of Washington street, the defendant had a line of poles 25 feet high equipped with three wires; that the Central Union Telephone Company, acting under a franchise from the city, in constructing a telephone plant, had erected a line of poles 30 feet high and one 45 feet in height on the same side of the street; that the wires used by the telephone company were uninsulated and that the insulation on the wires of the defendant company was worn and off in places; that the wires belonging to the two companies ran parallel to each other, the wires of the defendant company being five feet below the wires of the telephone company; that on January 4, 1902, deceased, with five other employees of the telephone company was engaged in stretching wires on its poles; that one of the wires having broken under the tension, at the pole upon which deceased was working, he returned to the ground to recover it; that he picked up the wire, climbed back on the pole and commenced to pull the wire up in place, handling it with both hands for that purpose; that the slack in the telephone wire brought it in contact with the electric light

feed wire whereupon the electric current was communi-
cated to deceased, shocking and burning him, and as
a result of which, he fell to the ground and was killed.
The evidence further shows that when employees of the
defendant company were engaged in working on its line,
it took the precaution, five minutes before turning on the
current of electricity, to sound a whistle, as a warning to
its employees that such current would be turned on; that
in the month of January on bright, clear days, such current
was usually turned on about four o'clock in the afternoon;
that the day in question was bright and clear; that the.
employees of the telephone company had come to rely upon
the giving of such signal as a warning to them in the prose-
cution of their work and were so relying thereon on the
occasion in question; that no such signal was given on
the day that deceased was killed, and that the accident
occurred at about 3:45 o'clock. It appears from the evi-
dence introduced on behalf of defendant for the purpose of
showing that deceased was guilty of contributory negli-
gence, that he was supplied with a safety strap for use
while working on poles and while both hands were em-
ployed, to strap himself to the pole and thus prevent his
falling to the ground in case of accident, and that such
strap was not so used by deceased on the occasion in question.

The evidence fails to show that there was any under-
standing or agreement between the defendant and the tele-
phone company or its employees, that defendant should
sound a whistle as a warning to employees of the telephone
company, before turning the current of electricity on its
wires, and also fails to show that the defendant company
had any knowledge that the employees of the telephone
company relied upon the giving of such signal as a warning
to them in the prosecution of their work. In the absence
of such proof, defendant, under the facts in this case, owed
no duty to deceased to give any warning, and a failure to
give such warning does not charge defendant with negli-
gence in that regard.

It is insisted by defendant in error that the uncontro-

verted evidence in the case establishes the contributory
negligence of deceased and bars a recovery.   There is evi-
dence tending to show that the electric wire of defendant,
at the time in question, carried an electric current of 1,000
volts, and that a current of 500 volts is sufficient top roduce
death.   It may be assumed, therefore, for the purpose of
this discussion, that deceased came to his death by reason
of the electrical current communicated by defendant's wire
and not by his fall to the ground, although the injury re-
ceived by such fall was sufficient in itself to produce death.

The safety strap, with which the deceased was equipped,
if used by him, would have prevented his falling to the
ground, but any use of such strap would not have prevented
his receiving the electrical shock which caused his death.
His failure, therefore, to use the safety strap and fasten
himself to the pole, cannot be imputed to him as contrib-
utory negligence.

The pivotal question in the case, and the one upon the
determination of which the liability or non-liability of the
defendant turns, is, whether the defendant owed a duty to
the deceased, as an employee of the telephone company, to
maintain a proper insulation on its wires at the place where
the telephone wire came in contact with the electric light
wire.   Electricity is universally recognized as a most
dangerous and subtle agency, and the law requires that
persons and corporations engaged in the business of supply-
ing it, shall exercise a degree of care and caution commen-
surate with the danger involved.   Neither statute nor
ordinance required defendant to insulate its wires, but it is
not contended that the defendant was thereby absolved
from any duty to insulate or otherwise protect its wires
from contact throughout its entire system.   It is a difficult
matter to formulate a rule, applicable to all cases, prescrib-
ing the duty with reference to the insulation or protection
of wires, or the like, incumbent upon those engaged in the
business of generating and supplying electricity, for a
breach of which negligence can be imputed.

It is insisted by plaintiff in error that one who operates

an electric light or power plant, must be held to do so at his peril. The practical application of this rule would make one operating such a plant an insurer, and responsible in damages for an injury sustained under any and all circumstances. It would require one operating such a plant to perfectly insulate the wires to prevent contact, and to maintain such perfect insulation at every point and over every portion of the system of wiring employed. We are referred to no authority holding the operator of such a plant to so strict a responsibility and do not think, upon principle, that the adoption of such a rule is demanded, in order to furnish adequate protection to persons, necessarily or accidentally brought in contact with the wires of such a plant.

A review of all the authorities cited, would unduly extend this opinion. We have examined them critically and find, without a noteworthy exception, that they sustain the conclusion that a company maintaining wires for the purpose of supplying light and power, must exercise the utmost care at places where persons may reasonably be anticipated to go for work, pleasure or business, to prevent injury; that at such places the company is bound perfectly to insulate and protect its wires from contact, and to maintain them in that condition. Fitzgerald v. Edison Co., 200 Pa. St. 540; Perham v. Portland Electric Co., 33 Ore. 451; Brown v. Edison Co., 90 Md. 400. Whether the degree of care required has been exercised in a given case is ordinarily a question for the jury. It may become a question of law, however, when the evidence in a case, together with all the reasonable inferences to be deduced therefrom, is insufficient to support a verdict for the plaintiff, or, as otherwise stated, a question of fact may become a question of law, when all reasonably intelligent minds, upon a consideration of the evidence and all the inferences to be justifiably drawn therefrom, must arrive at the same conclusion.

In this case the uncontradicted evidence shows that the poles of the defendant company were erect and in place; that the feed wire was in its normal position twenty-five

Rowe v. Taylorville Electric Co.

feet above the ground; that the insulation on such wire was imperfect at a place where the defendant in the exercise of due care, cannot be held to have anticipated that any one in the ordinary pursuit of work, pleasure or business would be brought into contact with it; that there was clear space of five feet between the wires of the defendant company and the wires of the telephone company; that the work in which deceased was engaged was ordinarily performed in such manner as not to involve contact of the two wires, and that as so ordinarily performed there was no necessity or occasion for such contact. This is not a case where the operator of an electric light or power plant permits a wire charged with a powerful current to fall on the highway or installs it near a building, or upon a standard used jointly with a telephone company, or negligently permits the current therefrom to be commuted to a guy wire or telephone wire. In all such cases, the operator of such a plant must be held to anticipate that persons may come into close proximity to the current thereby conveyed and be injured. The insulation on defendant's wire was worn and imperfect, but it was so worn and imperfect at a place where defendant cannot be held to have anticipated that persons in the pursuit of work, pleasure or business would go, and either of necessity or by accident, be brought into contact with the wire and thereby injured. Within the rule heretofore stated, defendant owed no duty to deceased to insulate its wire at the place in question, and its failure to do so, cannot, under the evidence in this case, be attributed to it as negligence. It follows that the court did not err in giving the peremptory instruction and the judgment will be affirmed.

*Affirmed.*